IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEA VILLAGE MARINA, LLC., <br><br> Plaintiff, <br><br> v. <br><br> A 1980 CARLCRAFT HOUSEBOAT, HULL ID NO. LMG37164M80D, et al., <br><br> Defendants. | Civil Action <br> No. 09-3292 (JBS-AMD) <br><br> **MEMORANDUM OPINION** |

**SIMANDLE,** Chief Judge:

    This matter comes before the Court on its own motion pursuant to Fed. R. Civ. P. 12(h)(2) to determine whether the Court has subject matter jurisdiction in light of <u>Lozman v. Riviera Beach</u>, 133 S. Ct. 735, 2013 WL 149633 (2013), which held that Petitioner Lozman's floating home was not a vessel for purposes of admiralty jurisdiction. The Court lacks subject matter jurisdiction and will dismiss this action. The Court finds as follows:

    1.   In 2009, Sea Village Marina ("SVM") filed this <u>in rem</u> action to obtain maritime liens against four houseboats whose owners had not paid dockage fees since 2007. On October 19, 2009, after conducting several hearings on the question of subject matter jurisdiction, the Court issued an Opinion and

1

Order establishing that it had admiralty jurisdiction over the dispute under 28 U.S.C. § 1333 because the houseboats were vessels. [Docket Items 29 & 30.]

    2.   On November 24, 2009, during the third hearing regarding admiralty jurisdiction, the Court saw indications that SVM's bookkeeping was "unorthodox." Sea Vill. Marina, LLC v. A 1980 Carlcraft Houseboat, 09-3292 (JBS-AMD), 2010 WL 338060, *3 (D.N.J. Jan. 26, 2010). For example, at the hearing, SVM attempted to introduce spreadsheets showing the dockage owed, but the dockage rates for each month had been "edited" and "re-revised." Id.  Plaintiff's counsel described the revised numbers as "doing [Defendants] a favor by reducing the amount of the claim." Id. Defendants asserted that Plaintiff SVM and SVM's counsel "committed fraud upon the Court by asserting knowingly false amounts of lien claims in the Verified Complaint . . . and in statements of account submitted as evidence in Court knowingly and falsely inflating the amounts invoiced . . . ." [Docket Item 47 at 1.]

    3.   On January 25, 2010, the Court entered an Order to Show Cause ("2010 Rule 11 Show Cause Order") and scheduled a hearing to investigate whether SVM and its counsel had "knowingly asserted false claims and submitted to the Court false statements of account . . . and, if so, whether sanctions

2

should be imposed for misconduct upon Plaintiff or Plaintiff's counsel or both under Rule 11, Fed. R. Civ. P., and/or under the inherent power of the Court . . . ." [Docket Item 47 at 1-2.] The Court noted that "sanctions may include but not be limited to the striking of claims, the limitation of claims, the retention of a forensic accountant at Plaintiff's expense, an award of attorneys' fees in favor of Defendants, and/or referral to disciplinary authorities." [Docket Item 47 at 2.]

    4.   The Court held a show cause hearing on February 19, 2010 and March 1, 2010. Before the Court issued an Opinion on the Rule 11 show cause hearings, Plaintiff SVM filed a suggestion of bankruptcy on March 17, 2010, noting that SVM had filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. [Docket Item 57.] On March 23, 2010, the Court issued an Order holding that the motion for sanctions should be stayed pursuant to the automatic stay provision of 11 U.S.C. § 362 pending the bankruptcy proceedings. [Docket Item 58.]

    5.   On May 4, 2012, in conjunction with approving SVM's Second Amended Reorganization Plan, the Bankruptcy Court granted relief from the automatic stay so that this action could proceed. [Bankr. No. 10-17235, Docket Item 549, at 13 ¶ 54.]

3

6. On January 15, 2013, the United States Supreme Court decided Lozman v. Riviera Beach, 133 S. Ct. 735, 2013 WL 149633 (2013), and held that Petitioner Lozman's floating home was not a vessel. After Lozman, the Court doubted that it had admiralty jurisdiction under 28 U.S.C. § 1333 to hear an action for maritime liens with regard to unpaid houseboat slip rentals. On January 17, 2013, the Court, on its own motion pursuant to Fed. R. Civ. P. 12(h)(2), issued a show cause order ("2013 Subject Matter Jurisdiction Show Cause Order") [Docket Item 66] asking the parties to submit briefing regarding whether the Court had subject matter jurisdiction in light of Lozman.

7. Instead of submitting briefing regarding subject matter jurisdiction, Plaintiff SVM filed a letter asking the Court to dismiss the case pursuant to Fed. R. Civ. P. 41(a)(2) without prejudice because SVM "ha[d] determined that it did not wish to proceed with this action." [Docket Item 67.] Defendant John Allen, owner of one of the floating homes, filed a letter in response [Docket Item 68], arguing that the Court must rule on the 2010 Rule 11 Show Cause Order and that he was entitled to damages from Plaintiff for violation of his constitutional rights in seizing his home and for the improper invocation of this Court's jurisdiction. Plaintiff filed a response letter [Docket Item 69] arguing that Defendants' constitutional rights

were not violated because (1) the Court conducted a prompt hearing in 2009 to address the jurisdictional question, and (2) before Lozman, there was ample precedent indicating that houseboats were subject to admiralty jurisdiction. Plaintiff argued that Defendants were not entitled to damages or to attorneys' fees.

8.  Plaintiff then filed a formal brief [Docket Item 72] as directed by the Court's 2013 Subject Matter Jurisdiction Show Cause Order. Plaintiff argued that the houseboats in this case and the houseboat in Lozman share the same relevant attributes because they are intended for use as stationary residences, not for transporting passengers or cargo. Plaintiff requested dismissal of this action without prejudice.

9.  Defendant Allen filed a response [Docket Item 73] arguing that the 2010 Rule 11 Show Cause Order remains outstanding and that the Court "was properly and vigorously advised that this was not an admiralty matter and that Plaintiff's utilizing the admiralty procedures . . . was in bad faith, malicious and unsupportable at law . . . ." [Docket Item 73 at 2.] Allen asks the Court to "conduct the appropriate hearings and issue the appropriate orders in relation to the Rule 11 sanctions and the damages flowing from the undisputedly

unlawful and unconstitutional taking of Allen's floating home." [Docket Item 73 at 6.]

10. Plaintiff filed a Reply noting that Allen is "not a party to this action and has filed no claim for wrongful arrest or any other claim upon which the Court could render a judgment." [Docket Item 74 at 2.] Plaintiff also argued that, even assuming that a wrongful arrest claim had been properly presented, the claim would be unavailing because there is no proof that the arrest warrant was procured maliciously or in bad faith. Plaintiff also noted that, even if Rule 11 sanctions were warranted, Defendants would not be entitled to a fee award because they did not file a motion for fees.

11. The Court lacks subject matter jurisdiction in this matter because the Lozman case established that floating homes which do not transport passengers or cargo, such as the residences in this action, are not subject to federal admiralty jurisdiction. Defendant Allen has not submitted any argument that, even after Lozman, the Court retains jurisdiction over an unpaid dockage fee case involving houseboats. This action will be dismissed without prejudice to Plaintiff's right to seek relief for unpaid dockage fees in another court. See Willy v. Coastal Corp., 503 U.S. 131, 137 (1992) ("A final determination

6

of lack of subject-matter jurisdiction of a case in a federal court, of course, precludes further adjudication of it.").

12. Defendant Allen is not entitled to damages from Plaintiff for initiating this action. In 2009, it was not clear that houseboats were not subject to admiralty jurisdiction; Plaintiff's initiation of an admiralty action was not unreasonable. In 2009, the Court found that jurisdiction was proper because the houseboats were not permanently moored, were floating, could be towed to other locations, had hull identification numbers assigned by the Coast Guard, had shore connections that could be disconnected at any time, and were capable of being used for transportation. Sea Vill. Marina, LLC v. A 1980 Carlcraft Houseboat, CIV 09-3292 JBS-AMD, 2009 WL 3379923 (D.N.J. Oct. 19, 2009). Lozman abrogated the Court's finding that the houseboats were vessels subject to admiralty jurisdiction, but the Lozman opinion was not unanimous: the dissent specifically noted that several district court opinions, including this Court's October 19, 2009 Opinion, "looked carefully at these crafts' structure and function, and determined that these ships had capabilities similar to other long-established vessels, suggesting a significant maritime transportation function." Lozman, 133 S. Ct. at 753. The Lozman

7

dissent further noted that "the majority works real damage to what has long been a settled area of maritime law." Id.

13.  In sum, Defendant Allen cannot argue that Plaintiff's invocation of admiralty jurisdiction was unreasonable in 2009. Moreover, "it cannot be said that [Plaintiff's] counsel was guilty of attempting to bring [this] action . . . in bad faith because he did not prognosticate that the rationale of [Lozman] would bar the suit." See Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed'n of Teachers, AFL-CIO, 829 F.2d 1370, 1376 (6th Cir. 1987).

14.  The Court's determination that it lacks subject matter jurisdiction to adjudicate the merits of this case does not automatically obviate the Court's jurisdiction to rule on its 2010 Rule 11 Show Cause Order. Generally, even a determination that a federal court lacks subject matter jurisdiction does not preclude Rule 11 sanctions: "imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." Willy, 503 U.S. at 138. The rationale behind permitting sanctions after determining the absence of subject matter jurisdiction is to preserve courts' interest in "the maintenance of orderly procedure." Id. at 137. Essentially,

8

"courts are vested with certain inherent powers that . . . are necessary to all other functions of courts [and] implicit in all these powers is the power to sanction." In re Orthopedic "Bone Screw" Products Liab. Litig., 132 F.3d 152, 156 (3d Cir. 1997).

15. But the Court's inherent power to sanction, even when subject matter jurisdiction is absent, does not extend to circumstances in which the sanction would be dispositive of the case's merits. "[W]here . . . the court lacks subject matter jurisdiction, it may not act in a way that determines the cause of action." Bone Screw, 132 F.3d at 156. In other words, "where jurisdiction is found to be lacking, there can be no adjudication of the merits of the case. This prohibition must bar the imposition of a sanction which will terminate the case on the merits." Id. at 157. In Bone Screw, the Third Circuit emphasized that, after subject matter jurisdiction is found lacking, a district court may only impose sanctions that are "collateral to the merits of the case." Id. at 156. The Bone Screw court vacated the district court's dismissal of the plaintiff's case because that sanction adjudicated the merits, but it affirmed the imposition of a monetary sanction that was collateral to the merits. Id. at 157.

16. The key factor, therefore, in determining the Court's power to impose sanctions after subject matter jurisdiction is

9

absent is whether the sanction is dispositive of or collateral to the merits of the case. In the present action, the Rule 11 inquiry is intertwined with the merits of the quantum of damages owed by the Defendant houseboats.

    17.  The Court's 2010 Rule 11 Show Cause Order addresses concerns about the accuracy of spreadsheets that Plaintiff SVM introduced showing the dockage owed. There was never a dispute that the Defendant houseboats had not paid rental fees to Plaintiff for years. See Sea Vill. Marina, LLC v. A 1980 Carlcraft Houseboat, 09-3292 (JBS-AMD), 2010 WL 338060, at * 6 (D.N.J. Jan. 26, 2010) ("Allen and Patterson acknowledged they owe some amount for dockage . . . . Plaintiff has established that the Allen and Patterson vessels have not paid for their dockage"). The 2010 Rule 11 Show Cause hearing explored the accuracy of Plaintiff's assertions about how much money was owed and whether higher rents had been properly put into effect. Before the Court can determine whether sanctions are warranted, regardless of the form of the sanctions, the Court must determine the accuracy or reasonableness of Plaintiff's assertions about the amount of unpaid dockage fees. If the Court made such a determination, it would be adjudicating the merits. The Court must dismiss its 2010 Rule 11 Show Cause Order because

the Court lacks subject matter jurisdiction and may not adjudicate the merits.

18. After Lozman, the Court lacks subject matter jurisdiction over this action for unpaid dockage fees. This case will be dismissed without prejudice to Plaintiff's right to seek relief in another court. Moreover, the Court will dismiss its 2010 Rule 11 Show Cause Order because that Order reaches the merits of this action. The accompanying order will be entered.

| | |
|---|---|
| **April 11, 2013** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |